Samuel J. Silvebmau, J.
In this article 78 proceeding the petitioners, tenants in 1045 Fifth Avenue, New York, New York, seek, inter alia, a review and annulment of the Attorney-General’s acceptance for filing of a plan to convert the specified premises to co-operative ownership, and injunctive relief restraining respondents Morgan Holding Corp. (Morgan) and Bonnie Shapiro (Shapiro), the sponsors of the plan, from transferring title of the premises to the respondent 1045 Tenants Corp., a co-operative corporation. Bespondents Morgan and Shapiro have cross-moved for an order dismissing the petition.
The plan to convert 1045 Fifth Avenue to co-operative ownership was accepted for filing by the Attorney-General on February 14,1972 and was presented to the tenants on February 15, *602 1972. A second amendment to the plan, declaring the plan effective, was accepted for filing by the Attorney-General on December 22, 1972. This proceeding was commenced on March 13, 1973.
Petitioners contend that the respondents failed to comply with applicable provisions of the Rent .Stabilization Law (Administrative Code of City of New York, § YY51-6.0, sübd. c, par. [9], cl. [a]), section 61 (4) (f) of the Rent Stabilization Code and section 352-e et seq. of the General Business Law, and that the Attorney-General’s acceptance of the plan was arbitrary and capricious and in violation of law. Petitioners ’ attack upon the plan includes the following allegations, among others: That 35% of the tenants in occupancy did not agree to purchase their apartments, that the plan contained misrepresentations and fraudulent statements, that the sponsors engaged in deceptive advertising, etc.
For present purposes, I think it is sufficient to consider the propriety of the inclusion in the 35% of agreements, of the cases of four tenants who agreed before the claimed effective date to purchase apartments which became vacant after the plan was offered, but whose occupancy had not yet begun at the time the plan was declared effective. The term of the lease of these tenants was claimed by the sponsors to begin in one case on January 1, 1973 and in the other three cases on February 1, 1973. Indeed, a rebuttal affidavit from the president of Morgan, one of the sponsors, implies that the latter three are still not in occupancy; that they were to take occupancy when title closed and the plan was consummated, and that the statement in the affidavit of December 14, 1972 declaring the plan effective with respect to those dates “ was, as it now develops, an overly optimistic estimate.”
Concededly at least three of these four “ tenants ” are necessary to arrive at the required 35%.
The Rent Stabilization Law provides for a Rent Stabilization Code to be promulgated by industry representatives and approved by the Housing and Development Administration. The statute (Administrative Code, § YY51-6.0, subd. c, par. [9], cl. [a]) requires with respect to co-operative plans that the plan provide that: “ (a) The plan will not be declared effective unless and until thirty-five per cent of the tenants then in occupancy have agreed to purchase dwelling units or the stock entitling them to proprietary leases ”.
For my purposes, the critical words are “ then in occupancy ”. I think the “ then ” is at the time the plan is declared effective, *603 in the present case, December 22, 1972. That seems to me to be both the syntactical meaning of the language and the sense of the provisions, and the offering plan in the case at bar takes the same position.
However, the sponsors treat as tenants in occupancy these four “ tenants ” who have agreed to purchase apartments but. who were neither in physical occupancy nor do they have leases whose terms had begun at the date the plan was declared effective.
Presumably the sponsors are relying upon section 61 (subd. 4[a] [ii]) of the Industry Code which provides that in computing the 35% of tenants then in occupancy, “ All purchases of apartments that became vacant after the Plan was presented will be included ”.
The validity of this provision was sustained in Matter of Kovarsky v. Housing & Development Administration of City of N. Y. (31 N Y 2d 184 [1972]). There remains the question of interpretation of this clause, i.e., whether it means regardless of whether such tenants are in occupancy, or provided such tenants are in occupancy. The issue was not passed on in the Kovarshy case. The record on appeal in that case shows that the sponsors had more than 35% without counting persons whose occupancy had not begun and indeed the sponsors apparently were not counting such persons.
I think that only tenants in actual occupancy (or at least with leases whose term had commenced) at the time the plan is declared effective may be counted toward the 35%. The quoted clause of the Industry Code is after all, by its own terms, an elaboration and definition of the phrase “ then in occupancy”. To interpret it as the sponsors suggest would I think make it mean “ whether or not then in occupancy ”.
I further note that in the Kovarshy record, there is a letter from the Housing and Development Administration to the Chairman of the Rent Stabilization Association which bears out this interpretation. It says: “ Apartments that are vacant as of the date the Plan is declared effective would not be considered as occupied in computing the 35%.”
It follows that at the date the plan was declared effective, 35% of tenants then in occupancy had not agreed to purchase apartments.
Objection was made to the standing of petitioners, nonpurchasers, to object to the plan. The objection which I am sustaining is not with respect to misrepresentations to purchasers as to which there is very considerable doubt of the *604 standing of nonpurchasers. (Richards v. Kaskel, 40 A D 2d 804 [1st Dept., 1972].) (But, cf., Matter of 1625 Tenants’ Assn. [Lefkowitz], N. Y. L. J., April 4, 1973, p. 2, col. 2, Chimera, J.) But here the objection is a failure to comply with the statute and that the Attorney-General should not have accepted the declaration of effectiveness. As the rights of nonpurchasing tenants are affected by this, they have standing. (Schumann v. 250 Tenants Corp., 65 Misc 2d 253, 256 [1970].)
It is unnecessary to decide whether an article 78 proceeding or an action for declaratory judgment is the proper remedy. The difference is one of form only, which the court should disregard. (Matter of Kovarsky v. Housing & Development Administration of City of N. Y., 31 N Y 2d 184, 191, supra.)
The petition is granted to the extent of annulling the declaration of effectiveness as of December 22, 1972 and the Attorney-General’s acceptance of that declaration as of that date.
The cross motion to dismiss the petition is denied.
In order to expedite the possible appeal, the short form order and judgment and this opinion shall be the judgment herein; but the parties may, if they desire, settle a long form judgment.